**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2022 IL App (3d) 210576-U

Order filed May 5, 2022

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2022

| | | |
|---|---|---|
| *In re* D.S., | ) | Appeal from the Circuit Court |
| | ) | of the 10th Judicial Circuit, |
| a Minor | ) | Peoria County, Illinois, |
| | ) | |
| (The People of the State of Illinois, | ) | |
| | ) | |
| Petitioner-Appellee, | ) | Appeal No. 3-21-0576 |
| | ) | Circuit No. 18-JA-75 |
| v. | ) | |
| | ) | |
| Dak S., | ) | Honorable |
| | ) | Timothy Cusack, |
| Respondent-Appellant). | ) | Judge, Presiding. |

_____

JUSTICE HOLDRIDGE delivered the judgment of the court.
Justice Lytton concurred in the judgment.
Presiding Justice O'Brien specially concurred.

_____

**ORDER**

¶ 1     *Held*: The trial court's determination that the respondent was unfit was not against the manifest weight of the evidence.

¶ 2     The respondent, Dak S., appeals following the termination of his parental rights, arguing that the circuit court's finding that he was unfit was against the manifest weight of the evidence.

¶ 3                                              I. BACKGROUND

¶ 4        On February 21, 2018, the State filed a petition for adjudication of wardship in which it alleged that D.S. (born June 2016) was a neglected minor. In support of that allegation, the State asserted that on February 17, 2018, the minor was taken to the hospital with a fever of 101.5 degrees; was vomiting, lethargic, and pale; was found to have a hemoglobin level of 1.6 (whereas 14 was normal); and the symptoms would have been apparent for a length of time prior to that date. The minor was diagnosed with congestive heart failure. The respondent reported that the minor's diet consisted only of cow's milk and french fries, while the mother reported the minor's diet to be chicken, roast beef, potatoes, apples, and popcorn. The respondent had the minor four days per week. The mother was previously indicated by the Department of Children and Family Services (DCFS) for inadequate supervision of the minor's sibling. An Order for Temporary Shelter Care was entered. The respondent denied all the allegations regarding the minor's diet but stipulated to the remainder of the petition. The court found D.S. to be neglected on April 25, 2018.

¶ 5        On May 30, 2018, following a dispositional hearing, the court found the respondent unfit, based on the contents of the petition and the contents of the court report regarding the respondent's participation and behavior before and after the events. The dispositional order required the respondent to perform the following tasks: (1) execute all authorizations for releases of information requested by DCFS to monitor and evaluate compliance; (2) cooperate fully with DCFS; (3) obtain a drug and alcohol assessment and follow, cooperate, and complete any course of treatment recommended, and provide proof of successful completion; (4) perform two random drug drops a month; (5) submit to a psychological examination and follow the recommendations; (6) participate and successfully complete counseling, including anger management, and provide DCFS with proof of successful completion; (7) participate and successfully complete a parenting course or classes and provide proof of successful completion; (8) obtain and maintain stable housing; (9) provide

the caseworker with any change in address and/or phone number; (10) provide the assigned caseworker with the requested information of any individual requested by DCFS; and (11) attend supervised visits with the minor and demonstrate appropriate parenting conduct during the visits. The mother appealed from the dispositional order, but the respondent did not.

¶ 6      On September 14, 2020, the State filed a Petition for Termination of Parental Rights, alleging that the respondent was unfit pursuant to section 1(D)(m)(ii) of the Adoption Act (Act) (750 ILCS 50/1(D)(m)(ii) (West 2020)), in that he failed to make reasonable progress toward the return of the minor during the nine-month period of December 2, 2019, to September 2, 2020.

¶ 7      A hearing on the State's termination petition began on November 10, 2021. Chloe Anderson testified that she was the caseworker on this case from December 2019 through February 2020. During her time as the caseworker, the respondent did not provide her with his address. While he began a psychological assessment, he never finished it. He did not consistently complete his drug drops, nor did he attend any counseling.

¶ 8      Haley Shropshire testified that she was the caseworker for the remainder of the nine-month period. The respondent completed drug drops on February 26 and March 12, which were positive for marijuana. He did not complete any drug drops after March. She did not know if the facility at which he was doing his drug drops closed due to COVID. Shropshire stated that the respondent never finished the psychological assessment while she was the caseworker either. The respondent told Shropshire that he was attending counseling, but she never received any reports from the therapist. Starting in March 2020, the respondent's visits with the minor were monthly and via video. Shropshire stated that the respondent may have missed one visit and one visit ended early. The reasons given were that the minor did not want to talk, and the respondent's phone

disconnected. Shropshire did not believe that it was safe to return the minor home based on the respondent's inconsistent involvement.

¶ 9 The respondent testified that he gave his address to both caseworkers and that he was attending counseling. He originally was undergoing anger management, but then began to cover anger management with his counselor. He stated his counselor told him he did not need substance abuse treatment, so he did not do the drug evaluation. He stated that he did two drug drops in February and March 2020. However, he then went to a drug drop and the facility was not open. He did not know how long it was closed, but he decided not to attend any more drug drops because it would interfere with his employment. The respondent stated that he never missed a visit with the minor. He agreed that he never finished the psychological assessment.

¶ 10 The court found that the State had met its burden of proof and found that the respondent was unfit. The court noted that the respondent provided no proof that he attended counseling and had not completed any of the services. After a best interest hearing, the respondent's parental rights were terminated on November 12, 2021.

¶ 11 II. ANALYSIS

¶ 12 On appeal, the respondent solely argues that the trial court's finding that he was unfit was against the manifest weight of the evidence.

¶ 13 Before terminating parental rights, the trial court must find by clear and convincing evidence that the parent is unfit under the definitions provided in the Act (750 ILCS 50/1 (West 2020)). 705 ILCS 405/2-29(2) (West 2020). The grounds for unfitness under the Act include, in pertinent part: "(m) Failure by a parent *** (ii) to make reasonable progress toward the return of the child to the parent during any 9-month period following the adjudication of neglected or abused minor ***." 750 ILCS 50/1(D)(m) (West 2020). Failure to make reasonable progress includes the

parent's failure to substantially fulfill his or her obligations under the service plan. *Id.* The court should consider "the parent's compliance with the service plans and the court's directives, in light of the condition which gave rise to the removal of the child, and in light of other conditions which later become known and which would prevent the court from returning custody of the child to the parent." *In re C.N.*, 196 Ill. 2d 181, 216-17 (2001). A parent demonstrates reasonable progress when the court finds it would be able to return the child to the parent's custody in the near future. *In re A.S.*, 2014 IL App (3d) 140060, ¶ 17.

¶ 14 On review, we will not disturb the trial court's determination that the State has demonstrated a parent's unfitness by clear and convincing evidence unless it is against the manifest weight of the evidence. *In re D.D.*, 196 Ill. 2d 405, 417 (2001). "A decision regarding parental fitness is against the manifest weight of the evidence where the opposite conclusion is clearly the proper result." *Id.*

¶ 15 Here, the court's finding that the respondent failed to make reasonable progress over the nine-month period in question toward the goal of returning the minor home was not contrary to the manifest weight of the evidence as there was no "measurable or demonstrable movement toward the goal of return of the child." *In re M.S.*, 210 Ill. App. 3d 1085, 1093 (1991). The evidence before the trial court showed that the respondent failed to (1) complete a psychological evaluation, (2) complete a substance abuse evaluation, and (3) complete drug drops. Moreover, both caseworkers testified that the respondent never provided them with his address and, while the respondent told Shropshire and testified that he was attending counseling, the record is devoid of any proof of this. Between December 2019 and September 2020, the respondent made no measurable progress toward the goal of returning the minor home. Accordingly, we cannot find

5

that the trial court's determination that he failed to make reasonable progress was contrary to the manifest weight of the evidence.

¶ 16    In coming to this conclusion, we note that the respondent argues that he did not have a drug problem, and, therefore, the lack of drug drops, THC positive drug drops, and failure to complete the drug evaluation should not have been held against him. However, a parent cannot pick and choose which portions of a service plan they want to comply with, and the respondent did not appeal the dispositional order providing the services he was required to complete.

¶ 17                                    III. CONCLUSION

¶ 18    The judgment of the circuit court of Peoria County is affirmed.

¶ 19    Affirmed.

¶ 20    PRESIDING JUSTICE O'BRIEN, specially concurring.

¶ 21    I agree with the majority that termination of respondent's parental rights was the appropriate disposition. I write separately to emphasize the fact that respondent has failed to take any steps to address the condition that brought D.S. into care. The parenting class he completed was targeted to parents who were no longer together and was directed at minimizing parental conflicts. It did not address nutrition. When directed to take a class that addressed those issues, respondent's mother looked for one but there is no evidence respondent ever enrolled in one.

¶ 22    At the time respondent's rights were terminated in November 2021, respondent had taken no measures to address the issue that brought D.S. into care in February 2018. He continually denied his statement that D.S.'s diet consisted only of cow's milk and french fries. Respondent was aware D.S.'s medical condition was caused by an improper diet, yet he continued to inadequately feed him. The caseworker's notes state that respondent at times did not provide

appropriate snacks for D.S. during visitation and that D.S. began to become sick after the visits due to what respondent fed him.

¶ 23    In my view, the fact that respondent failed to try to understand the need for proper nutrition for his son is a more significant factor than his failure to complete psychological and substance abuse evaluations and drug drops, and to provide a current address and proof of counseling to his caseworker.

¶ 24    For this reason, I specially concur.